UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| JUSTIN SMITH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ONE SOURCE TECHNOLOGY, LLC D/B/A ASURINT,<br><br>　　　　Defendant. | Civil Action No.: 2:22-cv-00244-RWS-JCF<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Justin Smith ("Plaintiff" or "Justin"), by and through the undersigned counsel, hereby brings this action against Defendant One Source Technology, LLC d/b/a Asurint ("Defendant" or "Asurint") and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## NATURE OF THE ACTION

1.　This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq*. Plaintiff was demoted from his employment position, among other damages, because Defendant sold consumer report(s) (alternatively referred to as a "background report") to third parties inaccurately and misleadingly indicating that Plaintiff was charged and found guilty of certain crimes.

1

2. Defendant's reporting of inaccurate information is not accidental, nor a result of simple negligence, but a result of deliberately designed policies and procedures.

3. Therefore, Defendant's reporting of the inaccurate and materially misleading information was caused by Defendant's failure to devise, implement, and follow reasonable procedures to ensure the maximum possible accuracy of the information contained on Plaintiff's consumer report(s).

4. As a result, Plaintiff suffered substantial actual damages, and, accordingly, is entitled to damages.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq.*

6. Defendant regularly transacts business within this judicial district. Defendant regularly directs business at this judicial district. Defendant voluntarily and purposefully availed itself of the protections of this judicial district, such that personal jurisdiction is established.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

8. Plaintiff is a natural person who resides in Habersham County, Georgia. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant regularly compiles and then distributes consumer information to third parties in exchange for monetary compensation. Therefore, Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).

10. Defendant Asurint maintains a principal place of business located at 1501 Euclid Avenue, Suite 900, Cleveland, Ohio 44115, and is incorporated in Delaware. Defendant may be served through its registered agent, c/o Corporation Service Company, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

11. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

**A. The FCRA**

12. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave

3

responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

13. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus"): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

14. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

**B.    Defendant's Reporting Harms Plaintiff**

15. Plaintiff Justin is a military veteran who served in Iraq.

16. Plaintiff has lived in Georgia for many years, and has resided at his current address, a rental, with his wife and their two children, for the past 16 years.

17. Plaintiff has operated as an independent trucker for many years. However, approximately 6 months ago, Plaintiff began working for his current employer, CRST International, Inc. ("CRST")

18. At CRST, Plaintiff is supervised directly by a Driver Manager, who, upon information and belief, is named Scott Beard (the "Manager").

19. Plaintiff typically receives 'loads' as assigned by the Manager; each 'load' consists of an assigned driving route.

20. Loads often vary in distance: some loads consist of longer drives, while others are shorter. On average, a load can consist of an estimated 1200 miles.

21. However, Plaintiff and CRST drivers are primarily compensated based on the amount of miles driven, Plaintiff and CRST drivers prefer longer routes and more miles, which result in greater pay.

22. Therefore, Plaintiff and his co-workers prefer some loads over others.

23. At CRST, Plaintiff is paired with a co-driver, who make up a single 'team' for assigned load purposes; Plaintiff and his paired co-driver drive assigned loads together and take turns at the wheel.

24. Plaintiff and his co-driver have the capacity and capability to drive an estimated 7,100 miles per week.

25. CRST drivers may be compensated at different rates per mile driven, which rates are typically based on a variety of factors, including driving experience.

26. As to Plaintiff – CRST initially paid Plaintiff .60 cents per mile, and did not guarantee any amount of assigned loads, that is, miles.

27. However, Plaintiff and his co-driver soon proved to be strong performers at CRST and, therefore, CRST promoted them to the so-called Pharma Team.

28. The Pharma Team included various perks and a higher compensation rate. For example, Plaintiff and his co-driver would be paid .90 cents per mile, instead of .60 cents, a significant raise. In addition, as part of the Pharma Team, Plaintiff would be guaranteed a minimum $1,300 dollars in pay per week.

29. On or about October 3, 2022, Plaintiff and his co-driver completed orientation for the Pharma Team program, and, thereafter, began driving as part of the Pharma Team.

30. During Plaintiff's first week as part of the Pharma Team, Plaintiff earned an approximate $2,000 dollars.

31. As part of joining the Pharma Team, CRST required that Plaintiff undergo a background check.

32. On or about October 10, 2022, Justin received a call from CRST dispatch while he was driving.

33. On the phone, CRST informed Plaintiff and his co-driver that they would be removed from the Pharma Team.

34. Justin's co-driver, Jay, a friend whom Plaintiff knew for years, since they were in CDL school together in April of 2022, and with whom Plaintiff has been driving since June 2022.

35. Put simply, Plaintiff and his co-driver, Jay, were demoted to a position that paid .60 cents per mile and lacked any guaranteed pay per week.

36. Plaintiff and his co-driver were shocked and deeply distressed by CRST's phone call that notified of the demotion. So much so, that they felt it unsafe to continue driving, and they were forced to pull over for a time to reduce the risk of causing an accident.

37. Dispatch also ordered Plaintiff and his co-driver to finish their current load and to drive to Kentucky, which was 200 miles away, to drop off the refrigerator trailer they had been driving.

38. That same day, Justin received a copy of his background report as prepared by Asurint and which Asurint had provided to CRST (the "Asurint Report").

39. Plaintiff learned that CRST had relied on the Asurint Report in making the determination to demote Justin and remove him from the Pharma Team.

40. Justin was horrified to discover that Asurint was reporting that Justin had been convicted of several crimes, including a felony.

41. Specifically, the Asurint Report indicated that Plaintiff had been convicted of a misdemeanor for "FLEEING OR ATTEMPTING TO ELUDE OFFICER," a misdemeanor for "FALSELY INCRIMINATE ANOTHER," a misdemeanor for "RESIST ARREST/OTHER LAW ENFORCEMENT," a felony for "ESCAPE," and a felony for "BURGLARY" (collectively, the "Criminal Convictions").

42. Asurint's reporting was patently false, as the Criminal Convictions did not belong to Plaintiff.

43. Rather, the Criminal Convictions belonged to a different person, who maintained a different Social Security number, height, and middle name.

44. Asurint's reporting of the Criminal Convictions indicated to third parties, including CRST, that Plaintiff was a two-time felon with a significant criminal history who should not be trusted.

45. Most of the Criminal Convictions were stated to have occurred in 2005, in Indiana, and some of those Criminal Convictions included an indication that Plaintiff was sentenced to be confined for more than a year in prison.

46. However, Plaintiff was serving in the United States military at that time, in Iraq, and was not in the United States at all, and certainly not in Indiana.

47. The Asurint Report was indicated as having been completed on September 27, 2022.

48. Upon information and belief, Asurint provided the Asurint Report to CRST on September 27, 2022.

49. Upon information and belief, Plaintiff did not receive any adverse action notices relating to the Asurint Report, or a copy of the Asurint Report, until October 10, 2022.

50. Hoping to correct this issue promptly, on or about the same date of October 10, 2022, Plaintiff called Asurint to dispute its reporting of the Criminal Convictions.

51. Justin and his co-driver, Jay, live paycheck to paycheck, and they worry that Justin will be terminated from CRST employment due to Asurint's inaccurate reporting.

52. Because Justin and Jay are team drivers, Jay will most likely be terminated from CRST employment if Justin is terminated.

53. Some days later, Plaintiff received a letter from Asurint dated October 11, 2022. In the letter, Asurint informed Plaintiff that, pursuant to a reinvestigation, Asurint had modified its Asurint Report to remove the Criminal Convictions.

54. Attached to Asurint's letter was a copy of a revised Asurint report (the "Revised Asurint Report"), which no longer contained any criminal records concerning Plaintiff.

55. Since being informed about the Revised Asurint Report, CRST re-added Plaintiff and his co-driver to the Pharma Team.

56. However, not before Plaintiff first lost two days of work with the Pharma Team.

57. Additionally, since CRST became aware of the Asurint Report and continuing still today, Plaintiff feels that CRST and its representatives and agents, including Plaintiff's Manager, have been giving him the proverbial cold shoulder.

58. Whilst before the Asurint Report, Plaintiff felt that the Manager had created a sense that CRST drivers and personnel were "family," now, after the Asurint Report, that notion had disappeared.

59. Furthermore, a CRST representative in charge of assigning drivers to various teams, including the Pharma Team, which person is called a Recruiter within CRST, was explicit in conversations with Plaintiff that the Recruiter did not believe that Plaintiff was not culpable in the Criminal Convictions.

60. Indeed, Plaintiff's experience – based on the attitude, tone, and assigned loads, of the Manager and the Recruiter – is such that he feels that the Manager and Recruiter do not actually believe that he had not committed the Criminal Convictions, despite Asurint's production of a Revised Asurint Report.

61. Since being re-added to the Pharma Team, Plaintiff has not been assigned many preferred loads. Instead, Plaintiff has been averaging approximately $1,000 per week, instead of the approximate $2,000 he had earned previously.

62. Overall, Plaintiff feels that he was no longer being treated as a valued member of the Pharma Team in the way he had been treated prior to the Asurint

Report being provided to CRST, and Plaintiff understands that to be the direct result of the Asurint Report.

## C. Plaintiff Suffered Additional Damages

63. Despite knowing that its procedures often result in inaccurate reporting, Defendant recklessly and knowingly fails to employ procedure to assure only *maximally accurate* consumer information is compiled and published in the consumer reports it sells to third parties for a profit.

64. As a direct result of Defendant's failure to maintain reasonable procedures to ensure accurate consumer reports, Plaintiff suffered as described hereinabove.

65. Upon information and belief, if Defendant had not reported the inaccurate and materially misleading Criminal Convictions on the Asurint Report, Plaintiff would not have been demoted at his job, would not have lost two days' worth of higher-paying driving as part of the Pharma Team, and would not have lost substantial opportunities and preferred loads subsequent to being re-added to the Pharma Team.

66. Consequently, because of Defendant's inaccurate reporting, Plaintiff suffered employment demotion by CRST and received lower wages.

67. Aside from the financial losses, Plaintiff suffered emotionally.

68. Upon information and belief, Defendant's inaccurate respective reports caused Plaintiff to suffer anxiety, aggravation, distress, and tumult.

69. Plaintiff was severely distressed by the ordeal he was put through by Defendant.

70. Plaintiff was deeply humiliated and embarrassed by the Asurint Report.

71. When Plaintiff reviewed the inaccurate background report, Plaintiff felt mad, frustrated, and humiliated by the gross inaccuracies.

72. Still today, Plaintiff feels that certain CRST personnel, including the Manager, do not believe Plaintiff that he is not associated with any of the Criminal Convictions; therefore, Plaintiff still feels humiliated.

73. Plaintiff feels responsible also for his co-driver, who did nothing wrong and was dragged down and harmed financially and emotionally as a result of the Asurint Report concerning Plaintiff.

74. Plaintiff feels guilt and shame in his having caused his co-driver to have lost the same employment opportunities as himself, due to no fault of his own.

75. Defendant's actions have caused Plaintiff severe emotional distress, anxiety, and sleepless nights.

76. Plaintiff feared, and to an extent still fears, that Defendant's inaccurate reporting may resurface and jeopardize his ability to maintain employment in the future.

77. Defendant's conduct, actions, and inactions caused Plaintiff to suffer actual damages, including, but not limited to, emotional distress which includes, mental anguish, embarrassment, stress, and anxiety.

### COUNT I
### Asurint Violated 15 U.S.C. § 1681e(b)

78. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

79. In the parlance of the FCRA, background reports are "consumer reports."

80. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

81. Asurint violated 15 U.S.C. § 1681e(b) by failing to *establish* reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

82. Asurint violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

83. Asurint's failure to employ and/or follow reasonable procedures while preparing Plaintiff's information caused Plaintiff to suffer actual damages, including statutory and actual damages, as described herein.

84. Asurint's violations of the FCRA were willful. Therefore, Asurint is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

85. Alternatively, Asurint's violations of the FCRA were negligent. Therefore, Asurint is individually liable to Plaintiff for statutory and actual damages. *See* 15 U.S.C. § 1681o.

86. In any event, Asurint is liable for Plaintiff's reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Asurint Violated 15 U.S.C. § 1681k(a)(2)

87. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

88. Under 15 U.S.C. § 1681k(a)(2) a consumer reporting agency must maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

89. Asurint failed to ensure that the public record information associated with Plaintiff was complete and up to date.

90. Asurint had actual notice that the information they provided was likely to have an adverse effect on Plaintiff's ability to obtain employment, as CRST was attempting to purchase this information from Asurint to evaluate Plaintiff for an employment opportunity.

91. Asurint's failure to maintain complete and up to date records while preparing Plaintiff's information caused Plaintiff to suffer actual damages, including statutory and actual damages, as described herein.

92. Asurint's violations of the FCRA were willful. Therefore, Asurint is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

93. Alternatively, Asurint's violations of the FCRA were negligent. Therefore, Asurint is individually liable to Plaintiff for statutory and actual damages. 15 U.S.C. § 1681o.

94. In any event, Asurint is liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

## **TRIAL BY JURY**

95. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

a) Actual damages pursuant to 15 U.S.C. §§ 1681n-o;

b) Statutory damages pursuant to 15 U.S.C. §§ 1681n-o;

c) Punitive damages pursuant to 15 U.S.C. § 1681n;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n-o;

e) Any pre-judgment and post-judgment interest as may be allowed under the law; and

f) Other and further relief as the Court may deem just and proper.


Dated: December 9, 2022,	By: *Misty Oaks Paxton*
	Misty Oaks Paxton, Esq.
	**THE OAKS FIRM**
	3895 Brookgreen Pt.
	Decatur, GA 30034
	T: (404) 725-5697
	F: (775) 320-3698
	E: attyoaks@yahoo.com

	*Attorneys for Plaintiff Justin Smith*